UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------X

JOSEPH ASSADOURIAN,

                    Petitioner,                    08 Civ. 4732

         -against-                                 OPINION

WILLIAM D. BROWN, Superintendent,

                    Respondent.

----------------------------------X

A P P E A R A N C E S:


          Attorneys for Petitioner

          DAVID L. LEWIS, ESQ.
          225 Broadway, Suite 3300
          New York, NY 10007


          Attorneys for Respondent

          ANDREW M. CUOMO
          Attorney General of the
            State of New York
          120 Broadway
          New York, NY  10271
          By:  Lisa Fleischmann, Esq.
               Alyson J. Gill, Esq.

**Sweet, D.J.**

Petitioner Joseph Assadourian ("Assadourian" or the "Petitioner") has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 asserting a violation of his federal constitutional rights arising out of the ineffective assistance of counsel. Respondent William D. Brown, Superintendent of the Eastern New York Correctional Facility (the "People"), has opposed the petition. Upon the facts and conclusions set forth below, a further hearing is required.

## I. PRIOR PROCEEDINGS

By New York County Indictment Number 3213/01, filed on June 11, 2001, Petitioner was charged as a second felony offender with three counts of Assault in the First Degree (intentional, depraved indifference, and felony-assault), two counts of Attempted Robbery in the First Degree (in violation of Penal Law §§ 110/160.159(2), (4)), and one count of Criminal Possession of a Weapon in the Second Degree (in violation of Penal Law § 265.03(2)) which carried a minimum sentence of 10 years. Petitioner's status as a second felony offender was based on a prior New

1

Jersey felony conviction. At Petitioner's arraignment, the
District Attorney offered to accept a guilty plea to the 10
year minimum sentence. This offer was refused. At a
pretrial Sandoval hearing, the state court denied
Petitioner's application to preclude the introduction of
the New Jersey felony conviction at Petitioner's trial for
the instant offense.

On November 13, 2001, Petitioner proceeded to a
jury trial in New York Supreme Court before the Honorable
Budd Goodman. Petitioner did not testify on his behalf.
On November 20, 2001, the jury found Petitioner guilty on
all the assault counts and the criminal possession of a
weapon charge. On December 17, 2001, after being
adjudicated a second felony offender based on the prior New
Jersey felony, Petitioner was sentenced to a determinate
prison term of fifteen years.

In November 2004, Petitioner's appellate attorney
moved the Appellate Division, First Department, to vacate
Petitioner's conviction, claiming that (1) the evidence was
legally insufficient to support the conviction for Assault
in the First Degree because there was insufficient evidence
that the victim suffered serious physical injury; and (2)

2

Petitioner was improperly adjudicated a second felony offender because his New Jersey conviction did not qualify as a New York felony. Petitioner also submitted a pro se supplemental brief claiming that his trial attorney was ineffective. The People submitted a brief in opposition.

By order of June 16, 2005, the Appellate Division found Petitioner's sentencing claim unpreserved, but vacated Petitioner's sentence in the interest of justice, finding that Petitioner's New Jersey conviction could not be relied upon as the predicate for his sentencing as a second felony offender in New York. The Appellate Division remanded the matter to the trial court to review defendant's predicate felon status. The Appellate Division also considered and rejected Petitioner's remaining claims, including those raised in Petitioner's pro se supplemental brief. People v. Assadourian, 796 N.Y.S.2d 913 (App. Div. 2005).

On June 23, 2005, with the aid of counsel, Petitioner sought leave to appeal to the New York Court of Appeals on his legal sufficiency and ineffective counsel claims. On July 29, 2005, Petitioner's application for leave to appeal was denied.

3

Counsel for Petitioner then moved the trial court on August 26, 2005 to vacate his conviction pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10, claiming that: (1) the evidence of assault in the first degree was legally insufficient; and (2) trial counsel was ineffective during plea negotiations because he was unaware that Petitioner was not a second felony offender. Petitioner claims that had trial counsel been aware of Petitioner's correct felony offender status, he would have challenged the prosecution's plea offer of ten years' imprisonment which was based on an incorrect assumption that Petitioner was a second felony offender. According to Petitioner, had he been offered the minimum sentence permitted by law for his offense as a first offender, he would have accepted the offer and not have gone to trial.

In opposing Petitioner's motion, the People argued that Petitioner's claims were procedurally barred and without merit. The People asserted that even if Petitioner had been treated as a first offender, he would not have been offered a more favorable plea bargain because of his prior record and the nature of the instant offense. In support, the People submitted an unsworn affirmation,

dated October 14, 2005, by the Assistant District Attorney who prosecuted Petitioner.

By decision and order dated November 10, 2005, (the "November 10 Order"), Judge Goodman denied Petitioner's motion to vacate, rejecting the claims that the evidence was legally insufficient and that counsel was ineffective in not realizing that Petitioner's New Jersey conviction did not qualify as a felony in New York. Noting that the People stated that Petitioner would not have been offered a plea of less than a ten year sentence because of his record of violence, Judge Goodman concluded that (1) there was no reasonable probability that Petitioner would have been offered a different plea had his true predicate felony status been known; and (2) that there was no indication in the record that Petitioner would have accepted a lesser sentence.

The Appellate Division, First Department subsequently denied Petitioner's request for leave to appeal the denial of his motion to vacate the judgment. Judge Goodman resentenced Petitioner to three fourteen-year determinate prison terms on the first-degree assault counts

5

and a seven year determinate sentence on the weapons counts, all to run concurrent to each other.

In June 2006, Petitioner appealed his re-sentencing to the Appellate Division, First Department, claiming that Petitioner's sentence was harsh and excessive. On December 14, 2006, the Appellate Division affirmed, without opinion, Petitioner's sentence. On January 10, 2007, Petitioner's application for leave to appeal to the New York Court of Appeals was denied.

On April 28, 2006, Petitioner moved pro se, pursuant to C.P.L. § 440.10, to vacate his conviction on the ground that trial counsel provided ineffective assistance by denying Petitioner his right to testify on his own behalf and by failing to recognize Petitioner's "actual sentencing exposure," which, Petitioner claimed, denied him the opportunity to accept an available plea offer. The motion was denied by the Honorable Edward J. McLaughlin on September 19, 2006.

Petitioner then sought leave to appeal the denial of his motion to the Appellate Division, First Department.

6

On December 1, 2006, the Appellate Division denied
Petitioner's application.

On May 29, 2007, Petitioner moved in the
Appellate Division, First Department, for a writ of error
coram nobis, on the ground that he received the ineffective
assistance of appellate counsel. On July 19, 2007, the
Appellate Division denied Petitioner's motion, and on
February 29, 2008, the New York Court of Appeals denied
Petitioner's application for leave to appeal.

In the instant petition, filed May 20, 2008,
Petitioner claims that: (1) he was deprived of his right to
the effective assistance of counsel during the Sandoval
hearing when counsel failed to discover that Petitioner was
not a second felony offender, which ultimately led counsel
to deny Petitioner his right to testify; (2) he was denied
the right to the effective assistance of counsel because
counsel's ignorance about Petitioner's predicate status
deprived Petitioner of his right to receive the most
favorable plea offer possible as a first felony offender;
and (3) he was deprived the right to the effective
assistance of appellate counsel. The petition was marked
fully submitted on December 12, 2008.

**The Trial on the Indictment**

**The People's Case:**

On May 24, 2001, Adam Lublin, a 25 year old talent manager and promoter, and Yannis Pappas, his 26 year old employee and friend, were working at Club NV, located at 29 Spring Street, between Hudson and Varick Streets. Lublin was managing a party at the club, as he had done every Wednesday night for the previous year. Pappas worked for Lublin, collecting the cover charge from the club's patrons.

At approximately 3:40 in the morning, Pappas and Lublin left the club together and walked to Lublin's car, a 2001 black Jeep Grand Cherokee, parked at the northwest corner of Varick Street, a car length or so from Spring Street. At the time, Lublin had "[m]aybe a thousand dollars or so" on him, as he typically did when he promoted shows at clubs. Trial Transcript ("Tr.") 269-70. Pappas had $150 – his salary for working that night.

Lublin got into the driver's side of the Jeep. Pappas was about to open the passenger door adjacent to the

8

curb when he looked over his shoulder and noticed Petitioner step out from one of the "dark vestibules" or storefronts along Varick Street. Tr. 270, 298, 349, 350, 361, 363, 365. Petitioner was wearing a bandana over his face, and although he was still "a little far away," Pappas "had a feeling something was wrong." Tr. 349. As Pappas hurried to get into the car, he heard Petitioner's footsteps speed up behind him. Pappas was about to close the door, but Petitioner got there before he could do so. Petitioner put his body in between the door and the car, preventing Pappas from closing it all the way.

Petitioner brandished a gun in his right hand and pointed it at eye-level, five or six inches from Pappas's face. Pappas could not hear anything Petitioner said as his attention was focused on the gun, a silver revolver. Lublin, however, heard Petitioner order Pappas to "[g]et out" of the car. Tr. 273. In order to "get away from the gun," Pappas turned his body to the right. Tr. 353-54. Petitioner also turned and Pappas was afraid Petitioner was going to shoot him. Pappas thus grabbed Petitioner's forearm and pushed it down. At no time did Pappas touch the gun. At that point, Petitioner fired once and shot Pappas in the upper inner thigh of his right leg. After

9

Petitioner shot Pappas, Pappas stood up and struggled with
him, trying to hold down Petitioner's arms. Petitioner
punched Pappas with his left hand. Because Pappas was
scared, he let go of Petitioner and "went down" to the
ground, face down. Tr. 352-53, 356-57.

Petitioner and Pappas struggled for less than a
minute, during which time Lublin watched in shock. Lublin
did not see the gun, but he saw a "big flash" and heard the
gunshot. Tr. 269, 271, 273, 337. At that point, realizing
that Pappas had been shot, Lublin jumped out of the car,
"fearing for [his] life." Tr. 269, 273. He ran west on
Spring Street, back toward Club NV, screaming for someone
to call the police and an ambulance.

Police Officers Joseph Cosaluzzo and Maryann
Dean, and Sergeant Michael Dimino, who were patrolling the
neighborhood to monitor club activity, heard the gun shot
and began pursuing Petitioner in their van when a
sanitation worker pointed in Petitioner's direction and
shouted, "he shot somebody." Tr. 394-98, 445, 447, 483,
521-24, 568. Dimino had his gun drawn and repeatedly
ordered Petitioner to stop, shouting, "Police. Don't move.
Show me your hands." Tr. 399, 453, 526-28, 571.

10

Petitioner glanced over his shoulder at the marked police van but did not break stride. The officers eventually lost sight of Petitioner after he turned behind a dumpster but continued the pursuit on foot. Another officer, Lieutenant Michael Mohan, arrived at Sixth Avenue and Vandam Street and joined the original officers in search of Petitioner. As Cosaluzzo and Mohan checked the fence line along Sixth Avenue, they observed Petitioner, "crouched down" low in a "fetal position," hiding beneath the shrubbery that hung down from the top of the fences. Tr. 404-05, 433, 440-42, 458, 621-22, 625.

Meanwhile, Pappas was taken by ambulance to St. Vincent's Hospital for treatment. X-rays were taken and a Doppler study performed to determine the bullet's location and assess the performance of the blood vessels in Pappas's lower extremities. The bullet had entered the upper part of Pappas's inner right thigh, passed through a "good portion of the large muscle group" in his inner right thigh and buttocks, and then lodged in the center of the buttocks, near his rectum. Tr. 693-94. Because Pappas was in no immediate danger from the bullet, and because removing it could have "cause[d] more harm than good," the bullet was left in Pappas's body. Tr. 369, 693.

11

Pappas stayed in the hospital overnight and was released on May 25, 2001. Pappas was bedridden for approximately one week after the shooting and was sore and "couldn't really walk that well" for one to two weeks. Tr. 368. As a result, Pappas was unable to work at the clubs for "a little white." Tr. 369-70. As of the time of trial, some six months after he was shot, the area still got "very sore" and hurt whenever Pappas ran or played sports. Tr. 370. He also had a scar on his upper right thigh where the bullet had entered.

**The Defense Case**

Albert DeLeon, a 22 year old criminal justice major at the University of Southern Florida, had known Petitioner since 1991. They were "very close friends" and saw each other socially once or twice a week. Tr. 649, 665, 669, 681.

At approximately 12:15 a.m. on May 24, 2001, Petitioner and DeLeon stopped at a "little bar," and then proceeded to Club Shine, a "big club" with music and

12

dancing. Tr. 651-52. Petitioner and DeLeon knew people at
the club and stayed there until close to 3:00 a.m.

At about 3:15 a.m., Petitioner and DeLeon drove
to Club NV. DeLeon parked his car two to three blocks away
from the club, somewhere on Varick Street. He and
Petitioner walked to the club. A bouncer advised them that
the club was closed. Petitioner and DeLeon were walking
back to their car and were on the corner of Spring and
Varick Streets, when DeLeon heard a gunshot "four [or] five
feet away." Tr. 657-58, 671-72. DeLeon saw a dark green
or black truck, "like a Jeep Cherokee, a Wrangler." Tr.
658-59, 675.

Although DeLeon never saw a gun, he saw a "spark
go off" and "started running" north up Varick Street toward
his car. Tr. 659, 672, 680. There were approximately five
other people around at the time and everyone "just started
scattering, running." Tr. 659. Petitioner had been to his
right, but then "disappeared." DeLeon did not know where
Petitioner went. Tr. 662, 672-73.

DeLeon ran two or three blocks up Varick Street
to where his car was parked. Although DeLeon was scared

13

that either he or Petitioner might get shot, DeLeon did not

call the police. After waiting near his car for

approximately ten minutes, DeLeon went back to the location

where he hard the gunshot. Police officers and an

ambulance had arrived. There was a man "laying on the

floor" with twenty or so people standing around him in a

circle. Tr. 660, 676. Petitioner was not among them.

DeLeon looked for Petitioner for twenty to thirty minutes,

but did not find him. DeLeon also tried Petitioner's cell

phone two or three times, but Petitioner did not answer.

DeLeon then returned to his car and waited for Petitioner

"for a while," but Petitioner did not return. Tr. 661.


Owen Lamb, an entertainment lawyer, knew Adam

Lublin and Yannis Pappas for approximately two years and

was Lublin's friend and business associate. On the night

of May 23, 2001, Lamb was at Club NV, as he had been every

Wednesday night since "start[ing] that nightclub" two years

ago. Tr. 713-14. At about 3:30 a.m., Lamb and four

acquaintances walked to Lamb's car, which was parked

outside the club's entrance on Spring Street. Lamb was

about to "pull out" of the space, when he saw Lublin

"running down the block" toward Lamb with his "hands sort

14

of flailing." Lublin was yelling, "Help. Help." Tr. 707-
08, 715-16.

As Lublin neared the club, Lamb heard him yell,
"They got Yannis. They got Yannis." Tr. 709. Concerned,
Lamb got out of his car and asked Lublin, "What's going
on?" Tr. 709, 717, 719. Lublin again replied, "They got
Yannis." Tr. 709, 719. When Lamb asked Lublin, "How many
of them are there?" and "Who is it?," Lublin told Lamb he
did not know. Tr. 710, 719. Lamb also asked Lublin what
"they" looked like, but Lamb replied, "I don't know. I
couldn't see." Tr. 711, 717. Lublin also mentioned that
the man's face was "covered." Tr. 713, 724. Lublin was
"frantic" as he spoke. Tr. 716-17.

At that point, Lamb "figure[d]" Pappas was being
beaten "or something like that." Tr. 711. Lublin was
pointing down Spring Street saying, "[w]e got to help him."
Tr. 711-12, 716. There were "a couple" of bouncers outside
the door of the club, and Lamb tried to get one of them to
go with him to help Pappas. Tr. 709-11. However, when
Lublin said, "But he's got a gun," Lamb and the bouncer
stopped because neither of them had a gun. Tr. 711-12,
718, 719.

15

Lamb got back in his car and "ease[d]" down
Spring Street in the direction Lublin had been pointing,
"trying to figure out what to do." Tr. 712. As he did so,
Pappas came limping around the corner and sat down on the
steps of a nearby furniture store; Pappas was grabbing his
leg and "writing in pain." Tr. 718. Lamb saw a police car
"coming on the other way" and flashed his lights at it to
get its attention. Tr. 719, 721-22. Once the police
arrived, Lamb left the scene. He did not wait for the
ambulance to arrive, nor did he speak with the police.

A week or so before trial, Lamb had spoken with
another prosecutor and told her that "maybe [he's] not
accurate" about what happened that night. Tr. 720.

## II.  DISCUSSION

### A.    The Petition Is Timely

28 U.S.C. § 2244(d)(1) requires that a federal
habeas corpus petition be filed within one year of the date
on which the Petitioner's state court criminal conviction
becomes final. For purposes of this petition, the

16

conviction became final upon the expiration of the time in which Petitioner could seek a writ of certiorari from the United States Supreme Court.  See 28 U.S.C. § 2244(d)(1)(A) ("The limitation period shall run from the latest of -- the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."); Williams v. Artuz, 237 F.3d 147, 151 (2d Cir.), cert. denied, 534 U.S. 924 (2001).  Petitioner's conviction was affirmed by the Appellate Division on December 14, 2006, and Petitioner's application for leave to appeal was denied by the New York Court of Appeals on January 10, 2007.  Accordingly, Petitioner's conviction became final on April 10, 2007, and he was required to file his habeas petition by April 10, 2008.

Although Petitioner failed to file his habeas petition by the required date, his petition remains timely. The statute of limitation for a habeas petition may be tolled during the pendency of a properly filed application for state post-conviction relief.  See 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of

17

limitation under this subsection."); Smith v. McGinnis, 208 F.3d 13, 15-16 (2d Cir.) (observing tolling provision "applies to both the statute of limitations and one-year grace period"), cert. denied, 531 U.S. 840 (2000). Here, Petitioner filed a coram nobis petition on May 29, 2007, only 48 days into the one-year grace period. That petition remained pending until the Court of Appeals denied leave on February 29, 2008. Accordingly, Petitioner's May 20, 2008 application for a writ of habeas corpus was timely.

## B. **The Claim Has Been Exhausted**

Prior to seeking review in this Court, Petitioner must exhaust all state-provided remedies. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509, 515 (1982). A claim will be deemed exhausted only after the Petitioner fairly presents the same federal constitutional claim that he now urges upon the federal courts to the highest state court which can hear his claim. O'Sullivan, 526 U.S at 848; Picard v. Connor, 404 U.S. 270, 275-76 (1971); United States ex rel. Kennedy v. Taylor, 269 U.S. 13, 17 (1925) ("In the regular and ordinary course of procedure, the

18

power of the highest state court in respect of such
question should first be exhausted.").

Petitioner has exhausted all of his ineffective
assistance of counsel claims. Petitioner claimed in his
first motion to vacate judgment that counsel provided
ineffective assistance of counsel during plea negotiations
because he was unaware that Petitioner was not a second
felony offender, and Petitioner raised that claim in
federal constitutional terms. After the motion was denied,
Petitioner sought, and was denied, leave to appeal to the
Appellate Division.

Similarly, in his second motion to vacate the
judgment, Petitioner claimed that counsel was ineffective
during the Sandoval hearing by waiving Petitioner's right
to testify at trial without informing Petitioner that the
decision whether to testify was his to make. Petitioner
again raised the claim in federal constitutional terms and
then sought, and was denied, leave to appeal to the
Appellate Division.

Finally, Petitioner's claim regarding appellate
counsel's performance are likewise exhausted. Petitioner

19

raised the claim that he currently raises, in a motion for
a writ of error coram nobis, in federal constitutional
terms and then sought, and was denied, leave to appeal to
the New York Court of Appeals.

The Petitioner's claims are exhausted.

## C. **Legal Standards**

### 1. **Standard of Review**

Pursuant to the Anti-Terrorism and Effective
Death Penalty Act ("AEDPA"), habeas corpus relief may be
obtained if Petitioner demonstrates that the state-court
adjudication "resulted in a decision that was contrary to,
or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court
of the United States." 28 U.S.C. § 2254(d)(1); see Sacco
v. Cooksey, 214 F.3d 270, 273 (2d Cir. 2000) (citing
Williams v. Taylor, 529 U.S. 362, 412 (2000)). The
requirements of § 2254(d)(1) are met if "one of the
following two conditions is satisfied – the state-court
adjudication resulted in a decision that (1) was contrary
to . . . clearly established Federal law, as determined by

the Supreme Court of the United States, or (2) involved an
unreasonable application of . . . clearly established
Federal law, as determined by the Supreme Court of the
United States." Williams, 529 U.S. at 412 (citing 28
U.S.C. § 2254(d)(1)) (internal quotations omitted). A
state-court decision is "contrary to" established federal
law if the state court "arrives at a conclusion opposite to
that reached by [the Supreme Court] on a question of law or
if the state court decides a case differently than [the]
Court has on a set of materially indistinguishable facts."
Id. at 412-13. A state-court decision represents an
"unreasonable application" of established federal law if
"the state court identifies the correct governing legal
principle from [the Supreme] Court's decisions but
unreasonably applies that principle to the facts of the
prisoner's case." Id. at 413.

In conducting the required analysis, any
determination of a factual issue made by a state court is
presumed correct unless the Petitioner can demonstrate by
clear and convincing evidence that the state court's
determination was erroneous. See 28 U.S.C. § 2254(e)(1);
Leka v. Portuondo, 257 F.3d 89, 98 (2d Cir. 2001).
Conclusions of law made by the state court, however, are

21

subject to de novo review. See Boria v. Keane, 99 F.3d
492, 498 (2d Cir. 1996).

## 2. Standard for Ineffective Assistance of Counsel

Under the framework established in Strickland v.
Washington, 466 U.S. 668 (1984), a defendant who
collaterally attacks his sentence or plea by alleging
ineffective assistance of counsel must prove (1) cause,
i.e., "counsel's representation fell below an objective
standard of reasonableness" as determined by reference to
"prevailing professional norms," id. at 688; and (2)
prejudice, i.e., "there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different." Id. at 694; see
also Murden v. Artuz, 497 F.3d 178, 198 (2d Cir. 2007).
When applying the Strickland test, "[j]udicial scrutiny of
counsel's performance must be highly deferential," and the
Court must make every effort "to eliminate the distorting
effects of hindsight." Strickland, 466 U.S. at 689-90; see
also United States v. Aguirre, 912 F.2d 555, 563 (2d Cir.
1990) ("The question is not whether some other course would
have been more successful . . . [but] whether counsel's

22

conduct of the defense was a reasonable course at the time
and came within the standards for acceptable
representation.").

As to cause, a reviewing court "'must indulge a
strong presumption that counsel's conduct falls within the
wide range of reasonable professional assistance,' bearing
in mind that 'there are countless ways to provide effective
assistance in any given case' and that 'even the best
criminal defense attorneys would not defend a particular
client in the same way.'" Aguirre, 912 F.2d at 560
(quoting Strickland, 466 U.S. at 689). Strickland directs
the Court "to consider all the circumstances counsel faced
at the time of the relevant conduct and evaluate the
conduct from counsel's point of view." Davis v. Greiner,
428 F.3d 81, 88 (2d Cir. 2005) (citing Strickland, 466 U.S.
at 688-89). A defendant cannot prevail on a claim of
ineffective assistance of counsel merely because he
believes that his counsel's strategy was inadequate. Mason
v. Scully, 16 F.3d 38, 42 (2d Cir. 1994) ("Actions or
omissions by counsel that might be considered sound trial
strategy do not constitute ineffective assistance."
(internal quotes omitted)); United States v. Sanchez, 790
F.2d 246, 253 (2d Cir. 1986).

23

As to prejudice, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. Id.; Williams, 529 U.S. at 393 n.17 (2000) ("[T]he 'prejudice' component of the Strickland test . . . focuses on the question [of] whether counsel's deficient performance renders the result of the . . . proceeding unreliable or the proceeding fundamentally unfair."). When considering the effect of counsel's deficient performance on the petitioner's sentence, no minimum increase must be shown in order to establish prejudice. Glover v. United States, 531 U.S. 198, 203-04 (2001) ("[O]ur jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance."). The magnitude of the difference in sentencing exposure may, however, be considered when determining the whether prejudice existed. Id.

With respect to a petition for habeas relief pursuant to 28 U.S.C. § 2254(d)(1), "[i]t is past question that the rule set forth in Strickland qualifies as clearly

established Federal law, as determined by the Supreme Court of the United States." Williams, 529 U.S. at 391 (internal quotes omitted).

## D.    Ineffective Assistance of Counsel Due to Failure to Determine Correct Predicate Felony Status

### 1.    Performance of Petitioner's Trial Counsel Was Not Reasonable

The right to counsel is the right to an effective counsel. Evers v. Lucey, 469 U.S. 387, 395-96 (1985). The right to counsel attaches "when the government's role shifts from investigation to accusation [and] the assistance of one versed in the intricacies . . . of law is needed to assure that the prosecution's case encounters the crucible of meaningful adversarial testing." Moran v. Burbine, 475 U.S. 412, 430 (1986) (quoting United States v. Cronic, 466 U.S. 648, 656 (1984)) (internal quotes and cites omitted). Thus, the right to counsel includes the right to effective counsel during plea negotiations following the initiation of formal charges. See, e.g., United States v. Gordon, 156 F.3d 376, 379 (2d Cir. 1998) (noting right to counsel attaches "after the initiation of formal charges" and includes plea negotiations); Boria, 99 F.3d at 496-97 (2d Cir. 1996) (granting habeas petition

25

where defense counsel failed to inform defendant of

consequences of rejecting plea offer).

When determining what constitutes reasonable

performance of counsel, Strickland provides that reference

may be made to "[p]revailing norms of practice," such as

the American Bar Association Standards for Criminal Justice

("ABA Standards"). Strickland, 466 U.S. at 688. ABA

Standard § 4-4.1 (Duty to Investigate) states:

a. Defense counsel should conduct a prompt
investigation of the circumstances of the case
and explore all avenues leading to facts relevant
to the merits of the case and the penalty in the
event of conviction. The investigation should
include efforts to secure information in the
possession of the prosecution and law enforcement
authorities. The duty to investigate exists
regardless of the accused's admissions or
statements to defense counsel of facts
constituting guilt or the accused's stated desire
to plead guilty.

ABA Standard § 4-4.1 (2d ed. 1980). The Supreme Court has

set forth a similar mandate, stating that "[p]rior to trial

an accused is entitled to rely upon his counsel to make an

independent examination of the facts, circumstances,

pleadings and laws involved and then to offer his informed

opinion as to what plea should be entered." Von Moltke v.

Gillies, 332 U.S. 708, 721 (1948); see also Purdy v. United

26

States, 208 F.3d 41, 45 (2d Cir. 2000) ("As part of this advice, counsel . . . should usually inform the defendant of the strengths and weaknesses of the case against him . . ." (internal cites omitted)); Boria, 99 F.3d at 496 ("A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears desirable." (quoting Anthony G. Amsterdam, Trial Manual 5 for the Defense of Criminal Cases 339 (1988))).

In contrast to the duty to investigate described in ABA Standard § 4-4.1(a) and Von Moltke, Petitioner's trial counsel failed to make a basic inquiry into the nature of the Petitioner's prior offense to determine whether it qualified as a predicate felony for purposes of New York criminal law. It is common knowledge that states differ in their classification of crimes, and the fact that the predicate felony arose from a conviction in another state signaled that an examination of the details of Petitioner's previous felony conviction was appropriate before accepting the People's treatment of the conviction. The lack of inquiry and investigation in connection with the plea negotiation rendered Petitioner's counsel unable to "advise his client fully on whether a particular plea to a charge appears desirable," Boria, 99 F.3d at 496, and

27

cannot be said to have fallen "within the range of competence demanded of attorneys in criminal cases," Strickland, 466 U.S. at 687 (quoting McMann v. Richardson, 397 U.S. 759, 770 (1970)) (internal quotes omitted). The performance of Petitioner's trial counsel therefore cannot be said to have met the "objective standards of reasonableness" under "prevailing norms of practice." See Mask v. McGinnis, 28 F. Supp. 2d 122, 125 (S.D.N.Y. 1998) (finding defense counsel's representation fell below prevailing norms due to failure to correctly identify defendant's felony status), aff'd 233 F.3d 132 (2000); see also, People v. Thomson, 847 N.Y.S.2d 682, 684 (App. Div. 2007) (finding first prong of Strickland test satisfied where defense counsel failed to determine prior New Jersey conviction did not qualify as a predicate felony for purposes of defendant's second felony status); People v. Garcia, 795 N.Y.S.2d 216, 219 (App. Div. 2005) (finding first prong of Strickland test satisfied where defense counsel failed to correct prosecution's mistaken characterization of defendant's felony status during plea negotiations).

Petitioner has satisfied the first prong of the Strickland test for ineffective assistance of counsel.

## 2.   A Hearing Is Required to Determine the Existence of Prejudice

In seeking to demonstrate that a reasonable probability exists that the outcome of the plea negotiations would have been different but for the ineffective assistance of his trial counsel, Petitioner cites a sworn affidavit contained in the record stating that he would have been willing to accept a plea of between five and eight years, rather than go to trial, had one been offered to him.   Exh. Q to Declaration of Allison J. Gill in Opposition to Petition for a Writ of Habeas Corpus ("Gill Decl.").   That such a statement may be seen as self-serving does not require its rejection; rather, the nature of the statement is to be considered along with all relevant circumstances.   Purdy v. Zeldes, 337 F.3d 253, 259 (2d Cir. 2003).

The question remains, however, whether the District Attorney would have offered a lower sentence during plea negotiations had Petitioner's correct felony status been known.   The People argue that even had Petitioner's correct felony status been known at the time of the plea negotiations, no lower plea would have been

29

offered given Petitioner's criminal history. In support of

this assertion, the People have submitted an unsworn

affidavit by the Assistant District Attorney handling

Petitioner's original criminal case stating that she would

not have offered a lower sentence even had she been aware

that Petitioner was not a second-time felony offender.

Gill Decl. Exh. I. No file entry or other contemporaneous

document is offered in support. Petitioner, however,

argues that it is standard practice during New York Supreme

Court arraignments for the People's initial plea offer to

be higher than its final offer.

Based on the submitted evidence, factual

questions remain as to whether a lower plea would have been

available to Petitioner had his correct felony status been

known. As set forth, infra, an evidentiary hearing is

required to determine whether the People would have offered

Petitioner a lower sentence as part of a negotiated plea

agreement had Petitioner been correctly classified as a

first felony offender.

### 3. State Court's Rejection of Petitioner's Claim Is Not Entitled to Deference

In challenging the November 10 Order, Petitioner asserts that the state court unreasonably applied established Federal law as set forth in Strickland, and therefore determinations by the state court concerning the performance of Petitioner's counsel are not entitled to deference by this Court.

In rejecting Petitioner's claim that counsel's failure to correctly identify Petitioner's felony status constituted ineffective assistance, the November 10 Order distinguished Mask v. McGinnis, 233 F.3d 132 (2d Cir. 1996), upon which Petitioner relied. In Mask, the Second Circuit Court of Appeals upheld the district court's grant of habeas relief based on the petitioner's claim of ineffective assistance of counsel. The district court found that petitioner's counsel rendered ineffective assistance by failing to correct the prosecutor's mistaken belief during plea negotiations that the defendant was a violent persistent felon under New York State law. See id. at 137-39.

The November 10 Order distinguished Mask from Petitioner's claim on the grounds that unlike in Mask, Petitioner's status was not "apparent simply from a perusal

31

of his print sheet" but "was dependent on an out-of-state conviction the nature of which was difficult to ascertain." November 10 Order at 2. However, simply because a client's defense requires more than a cursory effort does not justify the failure to exercise the diligence required of defense counsel in the representation of a client. Rather, such diligence falls within the "prevailing norms of practice" for a criminal defense attorney. See Mask, 28 F. Supp. 2d at 125. As noted supra, the fact that the predicate felony arose from a conviction in another state should have signaled that an examination of Petitioner's prior felony conviction was appropriate. That some effort on the part of Petitioner's trial counsel may have been required in order to conduct the necessary inquiry cannot serve to distinguish Petitioner's claim from Mask or excuse counsel's inaction.

The November 10 Order also cited People v. Esquiled, Ind. No. 8693-97, 2001 N.Y. Misc. LEXIS 424 (Sup. Ct. Aug. 17, 2001), in holding that the relative ease of identifying the mistake in the defendant's felony status in Mask distinguished it from the error committed by Petitioner's counsel. Esquiled, however, presents a set of facts distinctly different from those of Petitioner's

32

situation. Esquiled involved an erroneous prior felony
conviction arising from a mistaken belief that the
defendant was above the age of criminal responsibility at
the time of the conviction. Id. at *17. The Esquiled
court denied the petitioner's request for habeas relief on
the ground that neither the defendant nor the "rap sheet"
provided any specific indication that the conviction may
have been in error and that further investigation was
required. Id. at *17-18. Furthermore, at least four other
attorneys and two judges had reviewed the conviction in the
course of sentencing the defendant on another felony
conviction, indicating that the conviction was likely
legally correct. Id. at *18. In contrast, the very
circumstances of Petitioner's prior conviction served to
provide notice to counsel that some degree of investigation
into the nature of Petitioner's criminal history was
appropriate. Moreover, unlike in Esquiled, there was no
indication here that the People's treatment of Petitioner's
prior conviction was necessarily correct. The
circumstances upon which Petitioner bases his ineffective
assistance of counsel claim are far different than the
facts of Esquiled.

"While the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is somewhat unclear, it is well established in this Circuit . . . that Petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Sorto v. Herbert, 497 F.3d 163, 169 (2d Cir. 2007) (quoting Torres v. Berbary, 340 F.3d 63, 68 (2d Cir. 2003)(internal quotes omitted)). The conclusions of the November 10 Order meet the standard for the unreasonable application of "clearly established federal law" to the facts of a case, Williams, 529 U.S. at 412, and this Court is not required to defer to the state court's conclusions concerning the failure of Petitioner's trial counsel to determine Petitioner's correct felony status.

The November 10 Order also concluded that even had Petitioner's correct felony status been known, there was no reasonable possibility that the People would have offered a lower sentence or that, if offered, Petitioner would have accepted. However, the state court declined to hold an evidentiary hearing on the matter, instead relying solely on the unsworn affidavit from the Assistant District Attorney. November 10 Order at 3. While a state court's findings of fact are normally presumed correct, see 28

34

U.S.C. § 2254(e)(1), no such deference is required when the state court did not permit the development of a factual record. See Savinon v. Mazucca, 2009 WL 835735 (2d Cir. Mar. 31, 2009) ("[T]his deferential standard of review does not apply where the state courts did not permit adequate development of the factual record."); Drake v. Portuondo, 553 F.3d 230, 239 (2d Cir. 2009) (holding that no deference to state courts' conclusions is required because state courts did not permit the development of the factual record); Drake v. Portuondo, 321 F.3d 338, 345 (2d Cir. 2003) (same). Consequently, this Court is not bound by the conclusions of the state court concerning whether a reasonable probability exists that Petitioner would have been offered a lower sentence had his trial counsel's performance been adequate.

## E. A Hearing Is Appropriate To Determine What Plea the People Might Have Offered

"A district court has broad discretion to hear further evidence in habeas cases." Nieblas v. Smith, 204 F.3d 29, 31 (2d Cir. 1999) (citing Townsend v. Sain, 372 U.S. 293, 318 (1963)). "[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to

35

demonstrate that he is . . . entitled to relief, it is the
duty of the court to provide the necessary facilities and
procedures for an adequate inquiry." Bracy v. Gramley, 520
U.S. 899, 908-09 (1997) (ellipsis in original) (quoting
Harris v. Nelson, 394 U.S. 286, 300 (1969)). Although a
"habeas petitioner, unlike the usual civil litigant in
federal court is not entitled to discovery as a matter of
ordinary course," discovery may be granted upon a showing
of "good cause." Id. at 904; Rule 6(a), Rules Governing §
2254 Cases, 28 U.S.C. Foll. § 2254.

In addition, a petitioner who "failed to develop
the factual basis of a claim in State Court proceedings" is
ordinarily barred from seeking an evidentiary hearing in
federal court. 28 U.S.C. § 2254(e)(2). "However, a
petitioner cannot be said to have 'failed to develop' a
factual basis for his claim unless the undeveloped record
is a result of his own decision or omission." Drake v.
Portuondo, 321 F.3d 338, 347 (2d Cir. 2003) (quoting
McDonald v. Johnson, 139 F.3d 1056, 1059 (5th Cir. 1998)
(internal quotes omitted)). "Where, as here, a habeas
petitioner has diligently sought to develop the factual
basis underlying his habeas petition, but a state court has
prevented him from doing so, § 2254(e)(2) does not apply."

Id. (quoting Miller v. Champion, 161 F.3d 1249, 1253 (10th
Cir. 1998)).

In light of his trial counsel's failure to
provide reasonable assistance and the possibility that
Petitioner may have been offered a lower sentence during
plea negotiations had his correct felony status been
established, good cause is found to hold an evidentiary
hearing to resolve the questions of fact concerning what
plea Petitioner might have been offered. Because the state
court declined Petitioner's request to hold an evidentiary
hearing on this issue, see November 10 Order at 3, §
2254(e)(2) does not bar Petitioner from seeking the hearing
before this Court.

## F. Petitioner's Remaining Ineffective Assistance of Counsel Claims Are Denied

Petitioner also argues that trial counsel's
failure to determine his correct felony status under New
York law is further compounded by counsel's failure to
advise him of his right to testify on his own behalf at
trial. This claim was rejected by Judge McLaughlin, who
determined that, upon a review of the evidence presented at
trial, no prejudice arose from counsel's error. People v.

37

Assadourian, Ind. No. 3213/01, slip op. at 5 (N.Y. Sup. Ct.
Sept. 19, 2006). Judge McLaughlin's findings of fact
concerning the likely effect Petitioner's testimony would
have had on his defense, based as it was on a fully
developed record, is entitled to deference by this Court.
28 U.S.C. § 2254 (e)(1). Because Judge McLaughlin's
decision does not constitute a decision "that was contrary
to, or involved an unreasonable application of, clearly
established Federal law," 28 U.S.C. § 2254(d), deference to
the state court's determination is required. Petitioner's
claim for habeas relief on this ground is denied.

Finally, Petitioner argues that his appellate
counsel was ineffective for failing to challenge his trial
counsel's performance with respect to various allegedly
deficient jury instructions. This ground for habeas relief
also fails. As an initial matter, the New York Appellate
Division's summary rejection of Petitioner's writ for error
corum nobis, People v. Assadourian, M-2189, 2007 N.Y. App.
Div. LEXIS 8701 (July 19, 2007), constitutes an
adjudication on the merits of Petitioner's claim for
purposes of § 2254. See Sellan v. Kuhlman, 261 F.3d 303,
314 (2d Cir. 2001) (holding summary denial of writ of corum
nobis constituted an adjudication "on the merits" for

purposes of 28 U.S.C. § 2254). Consequently, the state-
court decision is entitled to deference unless Petitioenr
demonstrates that denial of his writ of corum nobis was
"contrary to, or involved an unreasonable application of,
clearly established Federal law." No such showing has
been made, and Petitioner's request for habeas relief on
this ground is therefore barred by § 2254(d)(1).

Moreover, the performance of Petitioner's
appellate counsel cannot be said to be "objectively
unreasonable." See Aparicio v. Artuz, 269 F.3d 78, 95 (2d
Cir. 2001) (applying Strickland to analysis of appellate
counsel performance). In order to satisfy the first prong
of Strickland, it is not enough for petitioner to show that
appellate counsel omitted a non-frivolous argument.
Aparicio, 269 F.3d at 95. Counsel is not required to raise
all potentially meritorious claims on appeal. Id.; see
also Jones v. Barnes, 463 U.S. 745, 751 (1983). Nor is
counsel required to raise all issues that the defendant
requests be raised. See Jameson v. Coughlin, 22 F.3d 427,
429 (2d Cir. 1994). Rather, counsel may winnow out weaker
arguments on appeal and focus on the one or two issues that
represent "the most promising issues for review," Jones,
463 U.S. at 752, and a "[f]ailure to make a meritless

argument does not amount to ineffective assistance."
United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999),
cert. denied, 531 U.S. 811 (2000). Petitioner has not
offered any reason why his appellate counsel's decision not
to raise the arguments relating to the jury instructions on
appeal was unreasonable, nor are the arguments cited in
Petitioner's brief sufficiently meritorious to render
appellate counsel's performance "outside the wide range of
professionally competent assistance." Strickland, 466 U.S.
at 690.

Petitioner's claim of ineffective assistance of
appellate counsel is denied.

## III.    CONCLUSION

For the reasons set forth above, a hearing will
be held at the convenience of counsel to determine whether
the People would have offered a lower sentence during plea
negotiations had Petitioner's correct felony status been
known.

It is so ordered.

40

New York, N.Y.
July    8    , 2009

ROBERT W. SWEET
U.S.D.J.